JOE RIDDLE v. THE STATE.

No. 8746. Delivered May 6, 1925.

**Transporting Intoxicating Liquor—Evidence, Held Insufficient.**

Where on a trial for transporting intoxicating liquor, the finding of four gallons of whisky in bottle in appellant's car, which was standing on the streets of Mt. Pleasant, the presence of the liquor in the car being accounted for by two uncontradicted and credible witness, consistent with the innocence of appellant, we are compelled to hold that the evidence does not establish transportation beyond a reasonable doubt and the cause is reversed.

Appeal from the District Court of Titus County. Tried below before the Hon. R. T. Wilkinson, Judge.

Appeal from a conviction for transporting intoxicating liquor: penalty, one year in the penitentiary.

The opinion states the case.

*John B. Cook, B. B. Sturgeon,* of Mt. Pleasant, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney for, the State.

MORROW, PRESIDING JUDGE.—The offense is the unlawful transportation of intoxicating liquor; punishment fixed at confinement in the penitentiary for one year.

The following is the substance of the State's evidence: The witness Gan saw the sheriff and the appellant drive up to the court house in an automobile. The witness was directed by the sheriff to remove the whisky out of the car, which he did, taking out about

four gallons in bottles. They were in tow sacks in the back of the car. The ownership of the car was unknown to the witness. The witness Anderson saw the appellant in front of a certain store which fronted the court house square in the town of Mt. Pleasant. Appellant was sitting in the car at the time. His wife and children got out of it. The witness did not see the car move but saw it standing at the store. After his family got out of the car, appellant drove it up to another store. Uless Lane got into the car and it was driven to the restaurant of Lane and stopped. Appellant and Lane got out of the car. Anderson went to a drug store and telephoned for the sheriff. After a time the sheriff came, entered the restaurant and came out with the appellant in his custody. After looking in the car, nor did he see any whisky until after the car reached the The two then got in the car and drove to the court house. Elliott's cafe was immediately across the street from that. of Lane. The car was in the middle of the street. The witness did not look in the car, nor did he see any whisky until after the car reached the court house in custody of the sheriff. It seems from the testimony of the witness Anderson that he saw another man in the car besides Lane and the appellant.

Appellant introduced the witness Coben, a member of the United States Aviation Corps stationed at Kelly Field. According to Coben, he was at the home of the appellant on the morning of the day on which the arrest took place and rode to town with him. Besides the appellant, his wife and two children and the witness Coben were in the car. The witness helped to fix a casing and saw the appellant take a pump from under the seat. All the parties mentioned got in the car and drove direct to Mt. Pleasant. Upon reaching town, the appellant's wife and children got out in front of Lide's store. No stop had been made in the meantime. According to this witness, there was no whisky in the car. After the wife and children of the appellant left the car at Lide's store, it was driven and stopped on the street near Elliott's cafe. Appellant and the witness Lane rode in the car. The witness and the appellant walked across the street about forty yards to Lane's restaurant where they ate some lunch. Neither left the car until the sheriff entered. He and the appellant went out together. The witness and the appellant were together from the time they left his home until the appellant went out of the cafe in company with the sheriff. After leaving Lide's store, Lane got in the car with the appellant and the witness.

According to Roberson, a witness for the appellant, he was in Elliott's cafe which was immediately across the street from that of Lane. He saw the appellant's car stop at the place mentioned. He also saw Elliot take two tow sacks out of the resturant and put

them in the car. Appellant was not present at the time. No one was there but Elliott. The witness remained in Elliott's cafe until after the arrest of the appellant.

Appellant, in his own behalf, testified that he, his wife, the two children and Coben went from his home to Mt. Pleasant in the car. There was a punctured tire which he and Coben fixed before leaving; that in getting the tools, the inner portion of the car was exposed. They drove to Lide's store in Mt. Pleasant, where the wife and children of the appellant got out of the car. Lane was on the street and wanted to ride to his place of business. Appellant drove the car of a point on the street between Lane's cafe and that of Elliott, where Coben and Lane got out of the car and entered Lane's cafe. While there, Elliott came in and borrowed the appellant's car. Up to that time, there was no whisky in the car. None had been put in it by the appellant or brought to town in it, and the car contained no whisky. Appellant did not own any whisky and did not know it was in the car. He did not know that Elliott intended to use the car for the purpose of transporting liquor. He was in the habit of lending his car to his friends. Appellant had, on several occasions, been indicted for violations of the liquor laws but all of these cases had been dismissed.

It seems that the State's reliance was upon circumstantial evidence. There was no direct testimony that the whisky which was taken out of the appellant's car after his arrest was in the car at the time he was driving it. In finding that he transported whisky, the jury disregarded the direct testimony of the witnesses Coben and Roberson. So far as the record shows, both of these witnesses were disinterested. Coben's testimony negatived the fact that there was any whisky in the car while it was driven by the appellant. Roberson's testimony supports that of the appellant to the effect that the whiskey was put in the car by Elliott after appellant had left it and while it was standing on the street. All the testimony shows that it was not moved after the appellant went into Lane's cafe until the time it was taken possession of by the sheriff. The sheriff did not testify, neither did Lane nor Elliott. The failure to use Lane is not explained. The record suggests that Elliott fled the country. The record is entirely silent as to the reason the State refrained from putting the sheriff on the stand. As the record is presented, it occurs to us that the jury must have acted arbitrarily in disregarding the uncontradicted testimony of Coben and Roberson. Neither of these witnesses were impeached or shown by the record to have been other than disinterested witnesses. The circumstances against the appellant are not of such cogency as warranted the jury in arbitrarily disregarding the testimony of apparently disinterested witnesses. From the State's testimony, as well as from that introduced by the

appellant, the hypothesis of innocence arising from the fact that there was no direct evidence that the whiskey was in the car while the appellant occupied it is not overcome, and the fact that its presence is accounted for by direct testimony which is unimpeached and from witness other than the appellant or any one shown to be interested in the result of the trial. Satterwhite v. State, 6 Texas Crim. App. 609; Ruling Case Law, Vol. 28, p. 660, sec. 245.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*